Johnson, J.
The ninth request was, that if the jury found that the applicant was, before the date of his application, addicted to periodical spreeing or getting drunh, without the knowledge of the company or its agents, the policy would be void, even though there were periods of longer or shorter duration in which he was duly sober.
The eleventh was in substance the same, that, if “ he was in the habit of periodically getting cl/runh, even though there were times aud occasions of longer or shorter duration in which he was duly sober,” the policy was void.
Each of these requests was refused, and in lieu thereof the court charged that it was obvious that these questions are not, whether the insured was ever drunk, or whether he ever used intoxicating liquors; “ but whether he was ever intemperate; that is, whether at any period of his life his usual and daily habits were such as to constitute and render him what is known as an intemperate man, — a mam, habitually under the influence of intoxicating liquor I
An occasional excess in the use of intoxicating liquor does not, it is true, constitute a habit, or make a man intemperate, •within the meaning of this policy; but if the habit has been formed and is indulged in, of drinking to excess and becoming intoxicated, whether daily and continuously, or periodically, with sober intervals of greater or less length, the person addicted to such a habit cannot be said to be of temperate habits, within the meaning of this policy.
In view of the fact, that the evidence strongly tended to show that it was the habit of ‡-he insured to indulge to excess at frequent times, and did not tend to show a case of daily or continuous state of intoxication, this charge was clearly misleading. Erom it the jury might well understand, and in view of the whole evidence, we think, may reasonably have understood, that Charles Rief was of correct and temperate habits, *600 although it was his habit to get drunk periodically and frequently, with sober intervals of longer or shorter duration.
The habit of using intoxicating liquors to excess is the result of indulging a natural or acquired appetite, by continued use, until it becomes a customary practice.
This habit may manifest itself in practice by daily or periodical intoxication or drunkenness.
Within the purview of these questions it must have existed at some previous time, or at the date of the application, but it is not essential to its existence that it should be continuously practiced, or that the insured should be daily and habitually under the influence of liquor.
Where the general habits of a man are either abstemious or temperate, an occasional indulgence to excess does not make him a man of intemperate habits. But if the habit is formed of drinking to excess, and the appetite for liquor is indulged to intoxication, either constantly or periodically, no one will claim that his habits are temperate, though he may be duly sober for longer or shorter periods in the intervals between the times of his debauches.
In Miller v. Mutual Benefit Ins. Co., 34 Iowa, 222, the insured was shown to be a man who indulged in a periodical habit of driuking to excess, and protracting these debauches until liis strength was exhausted. These excesses were not of long duration, and were followed by seasons of sobriety which would last for mouths. In one of these debauches, he died of delirium tremens. It was held he died from intemperance. Who would say that such a man wras of temperate habits? Such a habit of intemperance is quite as material to the risk, and equally as much within the terms of this policy, as the habit, of daily intoxication. Indeed, high medical authority is not wanting to show that periodical drunkenness, the result of an uncontrollable appetite, is generally much more excessive, and therefore more dangerous, than daily habitual intoxication.
But it is claimed that the latter part of this charge cures any error that may exist, caused by the use of the word “ daily,” in the first part. We think not. The concluding sentence: “If you find from the evidence that Charles Reif did so habitually *601 use intoxicating drinks to excess, then the pla’ntiff cannot recover,” referred the jury back to the definition, wherein they are told that if his usual cmd daily habits were to be under the influence of liquor, he could not recover, and was not a modification, but a? reiteration of the error.

Judgment reversed and cause rema/ndedfor a new trial.